**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

ALA F.,

        *Plaintiff,*

v.

COMMISSIONER OF SOCIAL
SECURITY,

        *Defendant.*

_____/

Case No. 1:25-cv-13400

Patricia T. Morris
United States Magistrate Judge

**MEMORANDUM OPINION AND ORDER ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 9, 10)**

### I.    CONCLUSION

For the reasons set forth below, Plaintiff's motion for summary judgment (ECF No. 9) is **DENIED**, the Commissioner of Social Security's motion for summary judgment (ECF No. 10) is **GRANTED**, and the decision of the Commissioner and administrative law judge (ALJ) is **AFFIRMED**.

### II.    ANALYSIS

#### A.    Introduction and Procedural History

On November 14, 2022, Plaintiff filed an application for disability insurance benefits, alleging he became disabled on December 10, 2019.  (ECF No. 6-1, PageID.37).  The Commissioner initially denied the application on August 28, 2023,

1

and on reconsideration on March 11, 2024.  (*Id.*).  Plaintiff then requested a hearing before an ALJ, which was held telephonically on September 16, 2024.  (*Id.*).  The ALJ issued a written decision on September 25, 2024, finding Plaintiff was not disabled.  (*Id.* at PageID.37–48).  Following the ALJ's decision, Plaintiff requested review from the Appeals Council, which denied the request on August 22, 2025.  (*Id.* at PageID.20–22).

Following the Appeals Council's denial of review, Plaintiff sought judicial review on October 24, 2025.  (ECF No. 1).  The parties consented to the Undersigned "conducting any or all proceedings in this case, including entry of a final judgment and all post-judgment matters."  (ECF No. 8).  The parties have since filed cross-motions for summary judgment for which briefing is complete.  (ECF Nos. 9, 10, 11).

### B.    Standard of Review

District courts have jurisdiction to review the Commissioner's final administrative decisions pursuant to 42 U.S.C. § 405(g).  The review is restricted solely to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."  *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (citation modified).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th

Cir. 2007) (citation modified). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified).

A district court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). Courts will "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* (citation modified).

### C.     Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, [the ALJ] consider[s] [the claimant's] work activity, if any.  If [the claimant is] doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.
>
> (ii) At the second step, [the ALJ] consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [the claimant is] not disabled.
>
> (iii) At the third step, [the ALJ] also consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant has] an impairment(s) that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement, [the ALJ] will find that [the claimant is] disabled.
>
> (iv) At the fourth step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . past relevant work. If [the claimant] can still do . . . past relevant work, [the ALJ] will find that [the claimant is] not disabled.
>
> (v) At the fifth and last step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . age, education, and work experience to see if [the claimant] can make an adjustment to other work.  If [the claimant] can make an adjustment to other work, [the ALJ] will find that [the claimant is] not disabled.  If [the claimant] cannot make an adjustment to other work, [the ALJ] will find that [the claimant is] disabled.

20 C.F.R. § 404.1520(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"Through step four, the claimant bears the burden of proving the existence

4

and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  The claimant must provide evidence establishing his or her residual functional capacity (RFC), which "is the most [the claimant] can still do despite [his or her] limitations," and is assessed using "all the relevant evidence in [the] case record."   20 C.F.R.  §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 214 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ determined Plaintiff was not disabled.  (ECF No. 6-1, PageID.48).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 10, 2019, the alleged onset date.  (*Id.* at PageID.40).  At step two, the ALJ found the following severe impairments: degenerative joint disease of both shoulders, cervical and lumbar

degenerative disc disease, and osteoarthritis of the right knee. (*Id.*).

At step three, the ALJ found none of the impairments, either independently or in combination, met or medically equaled in severity or duration the criteria of any listing. (*Id.* at PageID.42).

Next, the ALJ found Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except he could have occasionally balanced, stooped, knelt, crouched crawled and climbed ramps/stairs. He could have never climbed ladders, ropes and scaffolds, frequently reached up to shoulder level with both arms, frequently handled/fingered with both hands and faced no exposure to unprotected heights and dangerous moving machinery.

(*Id.*).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.46). However, at step five, the ALJ found other jobs in the national economy that Plaintiff could perform. (*Id.* at PageID.47). Specifically, the ALJ found Plaintiff could perform the requirements of an inspector/hand packager (595,000 jobs in the national economy), an electronics worker (241,000), and an assembler arranger (1,270,000). (*Id.*). The ALJ thus concluded Plaintiff was "not disabled." (*Id.* at PageID.47–48).

### E. Administrative Record

Plaintiff raises two issues on appeal. First, Plaintiff argues the ALJ failed to properly consider his subjective allegations of symptoms. Second, Plaintiff argues the ALJ's RFC is unsupported by substantial evidence. While the Court has

reviewed the entire record, it will only summarize the evidence relevant to Plaintiff's issues on appeal.

Plaintiff was involved in a motor vehicle accident in 2019.  (ECF No. 6-1, PageID.43).  Prior to the accident, Plaintiff had shoulder pain but managed it conservatively and had a full range of motion in his shoulders; however, the accident exacerbated his pain and decreased his range of motion.  (*Id.* at PageID.442–44, 456).  In January 2020, Plaintiff had an MRI of his right shoulder, which showed: (1) a high-grade partial thickness articular surface tear of the supraspinatus tendon; (2) infraspinatus tendinopathy without tear; and (3) tendinopathy of the intra-articular portion of the long head of the biceps tendon without tear.  (*Id.* at PageID.450–51).  In April 2020, Plaintiff had an MRI of his left shoulder, which showed: (1) a near full-thickness articular surface tear of the supraspinatus tendon with underlying moderate tendinosis; (2) tendinosis of the intrascapular portion of the long head of the biceps tendon without tear and mild insertional intrasubstance degeneration of the infraspinatus tendon; and (3) mild osteoarthritic change of the acromioclavicular joint.  (*Id.* at PageID.448–49).

In February and May 2020, Plaintiff underwent a right and left shoulder arthroscopy[1] respectively.  (*Id.* at PageID.453, 458).  Two weeks after his left

---

[1] An arthroscopy is a minimally invasive procedure which allows a surgeon to see and repair some types of joint damage through small incisions.  Arthroscopy (Sept. 20, 2024), https://www.mayoclinic.org/tests-procedures/arthroscopy/about/pac-20392974.

shoulder surgery, Plaintiff was showing signs of guarding with active motion and started physical therapy to work on range of motion for his shoulders.  (*Id.* at PageID.462).

At a follow-up appointment for persistent pain in July 2020, Plaintiff was observed to have forward flexion and abduction to 90 degrees bilaterally (which equates to the ability to raise your arms to shoulder level); good strength on the right but significant weakness on the left; and with no neuro losses at the shoulder itself. (*Id.* at PageID.460).  Plaintiff's doctor discussed that continuing pain likely came from degenerative changes in his cervical spine and did not think there was anything further that could be done to his shoulders.  (*Id.* at PageID.460–61).  Nevertheless, Plaintiff continued to show a 90-degree range of motion on both shoulders with satisfactory strength and no obvious swelling or atrophy.  (*E.g.*, *id.* at PageID.1711). Another doctor disagreed that there was no further surgery that could be done and planned reconstruction of Plaintiff's shoulders.  (*Id.* at PageID.1707).  Plaintiff had another right and left shoulder arthroscopy in October 2020 and February 2021, respectively.  (*Id.* at PageID.1512, 1518).  By May 2021, he was doing relatively well, with better range of motion, good strength, and only mild pain.  (*Id.* at PageID.1678).

A CT scan was taken of Plaintiff's cervical spine following the 2019 accident, which noted "age appropriate" degenerative changes.  (*Id.* at PageID.398–99, 661).

An April 2020 MRI of Plaintiff's cervical spine showed small disc bulging at C6 and C7, for which he was referred for physical therapy.  (*Id.* at PageID.656, 737). In September 2020, his provider noted that his cervical range of motion, flexion, and extension was within normal limits, but his shoulder abduction was limited to about 90 degrees.  (*Id.* at PageID.661).  An electromyography and nerve conduction study later that month was mostly normal, showing a moderate level of cervical facet syndrome.[2]  (*Id.* at PageID.664).

At an appointment in May 2021, Plaintiff reported that he was still having pain in his neck, left arm, and back, which he described as more of an ache than anything else and which he addressed with Motrin and pain injections.  (*Id.* at PageID.676).  A physical exam showed "[h]is cervical range of motion is within normal limits, lumbar is limited with full flexion but mainly from pain, but neurologically no focal deficits."  (*Id.* at PageID.680).

Plaintiff also reported chronic right knee pain in May 2021 and that he had difficulty with weightbearing on it.  (*Id.* at PageID.686).  An exam showed an effusion[3] and discomfort with palpitation but no evidence of instability.  (*Id.* at

---

[2] A type of arthritis that can lead to pain, stiffness, and limited movement.  Facet Arthropathy, https://my.clevelandclinic.org/health/diseases/facet-arthropathy (last updated Nov. 18, 2025).

[3] An effusion is an abnormal collection of fluid in the body.  Effusion, Nat'l Cancer Inst., https://www.cancer.gov/publications/dictionaries/cancer-terms/def/effusion (last visited Mar. 30, 2026).

PageID.689).   An x-ray showed some mild medial joint space narrowing.   (*Id.* at PageID.691, 732).   Pain injections seemed to stabilize the symptoms.   (*Id.* at PageID.705).

Records from a telemedicine appointment in July 2021 noted a compensated gait, which was negative the next month.   (*Id.* at PageID.699, 704).   A September MRI of Plaintiff's left shoulder was degraded by motion, but there was likely a mild partial tear in the rotator cuff, minimal arthritis, and some post-operative fraying and degeneration.   (*Id.* at PageID.730).   The same month, Plaintiff's doctor opined that further surgery on his shoulders was not recommended and he instead recommended lumbar radiofrequency neurotomy.   (*Id.* at PageID.718–19).   This was performed later in September, and Plaintiff reported in October that his back pain was now mild and the problem seemed to be improving.   (*Id.* at PageID.723).   He reported the pain had "definitely improved" but he felt like his endurance had decreased.   (*Id.* at PageID.727).   The doctor advised he restart physical therapy, which had been paused for the procedure, to build his endurance back up.   (*Id.* at PageID.728).   Additionally, the effects of the knee injection from five months before seemed to be wearing off and the doctor advised repeating the injection.   (*Id.*).   Plaintiff's date last insured was September 30, 2021.[4]

---

[4] "In order to establish entitlement to social security disability insurance benefits, an individual must show that he became 'disabled' prior to the expiration of his insured status." *Fee v. Sec'y of Health & Hum. Servs.*, 953 F.2d 644 (6th Cir. 1992).   Although

**F.      Governing Law**

The ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B).  The regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources.  An acceptable medical source means a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor);

(2) Licensed psychologist, which includes:

    (i)     A licensed or certified psychologist at the independent practice level; or

    (ii)    A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

---

Plaintiff cites to later evidence, the Court does not find it relevant enough to warrant detailed discussion.

(5) Qualified speech-language pathologist for speech or language impairments only.  For this source, *qualified* means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language Pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only . . . ;

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice . . . ; or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice . . . .

20 C.F.R. § 404.1502(a) (2021).  A medical source is

an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

*Id.* § 404.1502(d).  In contrast, a nonmedical source is "a source of evidence who is not a medical source."  *Id.* § 404.1502(e).  "This includes, but is not limited to: (1) [the claimant];  (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy."  *Id.*

The Social Security Administration (SSA) "will not defer or give any specific

12

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Id.* § 404.1520c(a). "The most important factors [the SSA] consider[s] when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.* § 404.1520c(c).

The first factor is "supportability." For this factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the opinion. In essence, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the source's "[r]elationship with the claimant." *Id*. § 404.1520c(c)(3). This factor includes analysis of:

(i)   Length of the treatment relationship.  The length of time a medical source has treated [the claimant] may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(ii)   Frequency of examinations.  The frequency of [the claimant's] visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(iii)   Purpose of the treatment relationship.  The purpose for treatment [the claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(iv)   Extent of the treatment relationship.  The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(v)   Examining relationship.  A medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder.

*Id.*

The fourth factor of the SSA's analysis is "specialization."  In making this determination, the SSA will consider

[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

*Id.* § 404.1520c(c)(4).

14

Finally, the SSA will consider "other factors." These may include any other information that "tend[s] to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(5). Other factors include "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, [it] will also consider whether new evidence [it] receive[s] after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement,

> [b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

15

*Id.* § 404.1520c(b)(1).   The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors [the SSA] consider[s] when [it] determine[s] how persuasive [it] find[s] a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2).   As such, the SSA

> will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision.  [The SSA] may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [it] articulate[s] how [it] consider[s] medical opinions and prior administrative medical findings in [the claimant's] case record.

*Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported," and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* § 404.1520c(b)(3).   The regulations clarify that the SSA is "not required to articulate how [it] considered evidence from nonmedical sources using the requirements of

16

paragraphs (a)–(c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c." *Id.* § 404.1520b(c).  The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities"; "[d]isability examiner findings," meaning "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [the claimant is] disabled"; and "[s]tatements on issues reserved to the Commissioner[,]" including

> (i)   Statements that [the claimant is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work;
>
> (ii)  Statements about whether or not [the claimant has] a severe impairment(s);
>
> (iii) Statements about whether or not [the claimant's] impairment(s) meet the duration requirement . . . ;
>
> (iv)  Statements about whether or not [the claimant's] impairment(s) meets or medically equals any listing in the Listing of Impairments . . . ;
>
> (v)   Statements about what [the claimant's] residual functional capacity is using [the SSA's] programmatic terms about the functional exertional levels . . . instead of descriptions about [the claimant's] functional abilities and limitations . . . ;

(vi)     Statements about whether or not [the claimant's] residual functional capacity prevents [the claimant] from doing past relevant work . . . ;

(vii)    Statements that [the claimant] [does] or [does] not meet the requirements of a medical-vocational rule . . . ; and

(viii)   Statements about whether or not [the claimant's] disability continues or ends when [the SSA] conduct[s] a continuing disability review.

*Id.* § 404.1520b(c)(3).

The regulations also provide that

[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on [the SSA] and is not [its] decision about whether [the claimant is] disabled or blind under [SSA] rules.

*Id.* § 404.1504.   Therefore, the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." *Id.*   The SSA will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it] receive[s] as evidence in [a] claim . . . ." *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f).  Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed,

18

apart from [the claimant's] statements (symptoms)." *Id.* § 404.1502(g). Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," which "include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain:

> In determining whether [the claimant is] disabled, [the SSA will] consider all [the claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The SSA] will consider all [the claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [his or her] ability to work.

*Id.* § 404.1529(a). But the SSA clarified that

> statements about [the claimant's] pain or other symptoms will not alone

19

establish that [the claimant is] disabled.  There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

*Id.*   Further, "[i]n evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the SSA] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]." *Id.*  The SSA will "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [it] will carefully consider any other information [the claimant] may submit about [his or her] symptoms." *Id.* § 404.1529(c)(3).  This other information may include "[t]he information that [the claimant's] medical sources or nonmedical sources provide about [the claimant's] pain or other symptoms," such as "what may precipitate or

20

aggravate [the claimant's] symptoms, what medications, treatments or other methods [the claimant uses] to alleviate them, and how the symptoms may affect [the claimant's] pattern of daily living," which "is also an important indicator of the intensity and persistence of [the claimant's] symptoms." *Id.*

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . [The SSA] will consider all of the evidence presented, including information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] medical sources, and observations by [the SSA's] employees and other persons.

*Id.* Factors relevant to a claimant's symptoms, such as pain, include:

(i)  [D]aily activities;

(ii)  The location, duration, frequency, and intensity of . . . pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)  Treatment, other than medication, . . . received for relief of . . . pain or other symptoms;

(vi)  Any measures . . . used to relieve . . . pain or other symptoms.

*Id.*

The new regulations also impose a duty on the claimant: "[i]n order to get

21

benefits, [the claimant] must follow treatment prescribed by [his or her] medical source(s) if this treatment is expected to restore [his or her] ability to work." *Id.* § 404.1530(a). Stated differently, "[i]f [the claimant does] not follow the prescribed treatment without a good reason, [the SSA] will not find [the claimant] disabled or, if [the claimant is] already receiving benefits, [the SSA] will stop paying . . . benefits." *Id.* § 404.1530(b). Acceptable (or "good") reasons for failure to follow prescribed treatment include:

(1)   The specific medical treatment is contrary to the established teaching and tenets of [the claimant's] religion;

(2)   The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)   Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)   The treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for [the claimant]; or

(5)   The treatment involves amputation of an extremity, or a major part of an extremity.

*Id.* § 404.1530(c).

### G.    Argument and Analysis

Plaintiff first argues the ALJ failed to properly consider his subjective allegations of symptoms. Second, Plaintiff argues the ALJ's RFC is unsupported by

substantial evidence.

### 1.      Subjective Testimony

Plaintiff argues the ALJ improperly relied on isolated normal exam findings, purported improvement with treatment, the absence of a proscribed assistive device, and selective consideration of the record, violating SSR 16-3p in rejecting Plaintiff's subjective complaints.  (ECF No. 9, PageID.2428).  Plaintiff cites to record evidence he contends establishes persistent symptoms over several years including multiple shoulder surgeries, an antalgic gait, limited range of motion, muscle spasms, right knee effusion, pain with movement, tremor, numbness, and paresthesia.  (*Id.* at PageID.2428–29).

According to SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements with other record evidence, considering his or her testimony about pain or other symptoms with the rest of the relevant evidence in the record and other factors.  SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  This analysis and the conclusions drawn from it—formerly termed a credibility determination—can be disturbed only for a "compelling reason."  *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The regulations establish a two-step process for evaluating subjective symptoms, including pain.    20 C.F.R.  § 404.1529(a);  SSR 16-3p,  2016 WL

1119029, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029, at *2; *Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *6.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). The absence of objective, confirming evidence obligates the ALJ to consider the following factors:

(i) [D]aily activities;
(ii) The location, duration, frequency, and intensity of . . . pain;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication . . . take[n] to alleviate . . . pain or other symptoms;
(v) Treatment, other than medication, . . . received for relief of . . . pain . . . ;
(vi) Any measures . . . used to relieve . . . pain; and
(vii) Other factors . . . .

20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027,

1039–40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility" as long as the assessment is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Saunders v. Kijakzi*, No. 20-cv-12210, 2022 WL 885838, at *3 (E.D. Mich. Mar. 25, 2022) ("'It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant'" (quoting *Rogers.*, 486 F.3d at 247)).

Claims of cherry-picking record evidence rarely succeed: "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (crediting argument of cherry picking requires court to re-weigh record evidence). The Court may not reweigh evidence on appeal. *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. 2022).

Here, Plaintiff's argument amounts to a request to re-weigh the evidence. Indeed, the ALJ discussed the evidence Plaintiff points to but ultimately found Plaintiff could perform light work with additional restrictions:

> The claimant's pain, fatigue, reduced range of motion and instances of weakness and spasm limited him to light work. These factors as well

25

as sometime gait problems, difficulties changing position, positive provocative testing and ongoing problems with pain and limitations in both shoulders indicate he could have occassionally [sic] balanced, stooped, knelt, crouched crawled and climbed ramps/stairs but could have never climbed ladders, ropes and scaffolds, only frequently reached up to shoulder level with both arms and only frequently handled/fingered with both hands.   The combined effect of symptomatology from his multiple impairments including the distracting effect of pain and any side effects from medication indicate he could have faced no exposure to unprotected heights and dangerous moving machinery.

(ECF No. 6-1, PageID.45).

An RFC is the most a plaintiff can do despite his limitations.   20 C.F.R. §§ 404.1545(a)(1).  There is no dispute that Plaintiff has pain and that his symptoms and recovery have lasted several years following the 2019 car accident.  But the question is whether Plaintiff is able to work with the RFC limitations.  Among other things, the ALJ limited him to only lifting his arms to shoulder level, which was a well-documented capability during the relevant period.  Plaintiff does not show any greater restrictions he required with his limitations and the ALJ's determination is entitled to deference.  Plaintiff's citations to evidence such as his MRIs, X-rays, and other imaging—considered by the ALJ—does not show that additional limitations were warranted let alone the nature of such limitations.  *Flowers v. Comm'r of Soc. Sec.*, No. 14-cv-12449, 2015 WL 4274961, at *4 (E.D. Mich. July 14, 2015) ("[T]he MRI and CT scan reports provide no insight into what additional limitations Plaintiff may suffer . . . .  At most, Plaintiff leaves the ALJ and the Court to speculate with

26

regard to [further limitations].").

The Court's review of the ALJ's detailed decision, the medical records, and Plaintiff's arguments show that the ALJ properly considered the appropriate factors in weighing Plaintiff's statements of subjective symptoms.  As such, Plaintiff has not shown the ALJ erred nor that the ALJ's decision is not supported by substantial evidence.

### 2.      Substantial Evidence

Plaintiff next argues that the RFC is not supported by substantial evidence. This argument substantially overlaps with his first and the Court's analysis in the prior subsection applies to this argument as well.

Many of Plaintiff's arguments cite medical evidence that has already been weighed and considered by the ALJ.  This is an improper attempt to get the Court to reweigh the evidence.  But even if this Court were to come to a different conclusion, there is substantial evidence that supports the ALJ's RFC.  *See, e.g.*, *White v. Colvin*, No. 14-cv-12870, 2015 WL 5210243, at *12 (E.D. Mich. Sept. 3, 2015) ("Where, as here, the ALJ provided a narrative discussion of a claimant's symptoms, their effect on the claimant's work, and how he reached those conclusions, the ALJ's narrative substantially complied with the requirements of SSR 96-8p."); *Deweese v. Comm'r of Soc. Sec.*, No. 17-14081, 2018 WL 8244844, at *7 (E.D. Mich. Oct. 9, 2018), *report and recommendation adopted*, 2019 WL 1324238 (E.D. Mich. Mar. 25,

2019); *Taylor v. Comm'r of Soc. Sec.*, No. 25-cv-10068, 2026 WL 867499, at *3 (E.D. Mich. Mar. 30, 2026).

Additionally, Plaintiff argues SSR 96-8p required the ALJ to perform a function-by-function assessment of the medical evidence.  However, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing."  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (quotation omitted).  Instead, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work related activities, and explain the resolution of any inconsistencies in the record."  *Id.* at 548; *see also Taylor*, 2026 WL 867499, at *2.

As discussed above, the ALJ appropriately discussed Plaintiff's reports and the medical evidence and found that Plaintiff was able to perform work so long as it complied with the RFC.  The ALJ was not required to do more than this.  Plaintiff "bears the burden of showing that [he or] she requires a more restrictive RFC."  *Scott v. Saul*, No. 19-cv-13200, 2021 WL 1234598, at *6 (E.D. Mich. Feb. 16, 2021) (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)), *report and recommendation adopted*, 2021 WL 1212666 (E.D. Mich. Mar. 31, 2021).  Plaintiff has not shown the RFC is unsupported by substantial evidence, or that he required further restrictions, only that there is substantial evidence that could go

28

either way.  Because it is the ALJ's job—not this Court's—to weigh the evidence, Plaintiff's arguments do not carry the day.

Finally, Plaintiff argues the ALJ unreasonably relied on outdated state agency decisions for support.  A review of the ALJ's decision quickly dispels this argument. True, the ALJ found the state agency examiners' opinions "largely persuasive."  But the ALJ also noted that the doctors had not examined Plaintiff nor had the benefit of the full record.  (ECF No. 6-1, PageID.46).  The ALJ, on the other hand, fully considered the medical evidence available to him and found that the prior opinions were consistent with evidence that was not then available to them.  Therefore, Plaintiff's motion for summary judgment will be denied.

## III.   <u>ORDER</u>

For these reasons, Plaintiff's motion (ECF No. 9) is **DENIED**, the Commissioner's motion (ECF No. 10) is **GRANTED**, and the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Date: April 8, 2026                    S/ PATRICIA T. MORRIS
                                       Patricia T. Morris
                                       United States Magistrate Judge